IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:16-cv-00101-FDW
(3:14-cr-00145-FDW-DCK-1)

| | |
|---|---|
| TARA GIST-SAVAGE, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on consideration of Petitioner's pro se Motion to Vacate, Set Aside or Correct Sentence which is filed pursuant to 28 U.S.C. § 2255. For the reasons that follow, Petitioner's § 2255 Motion will be denied and dismissed.

I. BACKGROUND

On August 12, 2014, Petitioner was charged by bill of information with one count of wire fraud, in violation of 18 U.S.C. § 1343 (Count 1), and one count of filing a false tax return, in violation of 26 U.S.C. § 7206(1) (Count 2). Petitioner retained counsel and entered into a written plea agreement with the Government, agreeing to plead guilty to both counts in the bill of information and waive her right to proceed by bill of indictment.[1]

On September 9, 2014, Petitioner appeared with counsel before U.S. Magistrate Judge David Kessler for her initial appearance and the court reviewed in detail the allegations in the introductory paragraphs in the bill of information and reviewed the elements of Counts 1 and 2 and the maximum penalties Petitioner faced upon conviction. Petitioner acknowledged that she had reviewed the bill of information with her counsel and that she understood the allegations, charges, and maximum penalties. Next, the court explained that Petitioner was entitled to have the

---
[1] A factual basis was filed on the same day as the plea agreement in which the parties agreed there were sufficient facts to support convictions on Counts 1 and 2.

Government seek a bill of indictment but Petitioner agreed that she would waive that right.

After the initial appearance, the court proceeded with the Rule 11 hearing and Petitioner was placed under oath. The court again reviewed the charges and maximum penalties and explained that Petitioner could plead not guilty and proceed to trial. The court also addressed Petitioner regarding the contents of the factual basis that was filed and she averred that she understood and agreed with its contents. Petitioner again admitted that she had reviewed possible defenses to the charges with her attorney but maintained that she still wanted to plead guilty.

The Government summarized the terms of the plea agreement and Petitioner acknowledged that she had reviewed its contents with her attorney and that she understood and agreed with its terms. Finally, Petitioner averred that she was satisfied with the services of her attorney and that she was in fact guilty of the charges and that she wished to plead guilty. The court recorded Petitioner's answers in writing and presented them to Petitioner and her counsel to review and they agreed that the answers that Petitioner had given under oath were true. The court accepted the guilty plea after finding that it was knowing and voluntary and Petitioner's case was referred to the U.S. Probation Office for preparation of a presentence report (PSR).

In the PSR, the probation officer included the complete factual basis that was filed along with the plea agreement:

1. *From in or about 2007 to in or about 2013, defendant Tara Gist-Savage worked for WACHS Energy Services (WES) in Belmont, North Carolina as the employee in charge of the payroll department. Gist-Savage was responsible for the payroll of WES, as well as the payroll for WACHS Technical Services (WTS), a separate affiliated entity with the same ownership as WES.*

2. *Beginning in at least in or about 2008, and continuing through in or about 2013, Gist-Savage engaged in a scheme to defraud WES and WTS whereby she fraudulently obtained approximately $410,936.04 in payroll payments.*

3. *Beginning in at least 2008, Gist-Savage used her position at WES to access the identity information of former and inactive employees of WES and WTS. Gist-Savage used this information to generate fraudulent payroll checks and payroll wires in the names of at least 49 individuals. Gist-Savage provided the fraudulent information to*

*various payroll companies used by WES and WTS who were responsible for generating payroll payments.*

4. *Gist-Savage opened at least four bank accounts in her own name to deposit the fraudulent payroll checks and payroll wires. Specifically:*

    a) *Gist-Savage opened a bank account a Woodforest National Bank ending in "1559" that she used to deposit approximately $357,323.02 in fraudulent payroll wires, in the names of at least 21 individuals between 2008 and 2013.*

    b) *Gist-Savage opened a bank account at Bank of America ending in "0732" that she used to deposit approximately $41,272.65 in fraudulent payroll checks, in the names of at least 21 individuals between 2008 and 2010.*

    c) *Gist-Savage opened a bank account at Bank of America ending in "4361" that she used to deposit approximately $4,654.36 in fraudulent payroll checks, in the names of at least 3 individuals in 2010.*

    d) *Gist-Savage opened a bank account at Sun Trust ending in "2214" that she used to deposit approximately $7,686.01 in fraudulent payroll checks, in the names of at least 4 individuals between 2010 and 2011.*

5. *For years 2008 through 2012, Gist-Savage failed to report the fraudulently obtained income on her U.S. Individual Income Tax Returns. The estimated tax due and owing relative to the unreported income was approximately $101,650.*

6. *On or about December 21, 2010, in the Western District of North Carolina, for the purpose of executing or attempting to execute a scheme and artifice to defraud and deprive, defendant knowingly caused to be transmitted by means of wire communication in interstate commerce the following matter: a wire written on the payroll account of WTS at payroll company ADP to H.B., an individual who is known to the U.S. Attorney, in the amount of $3,881.96 that was deposited into Gist-Savage's bank account at Wood forest National Bank ending in "1559."*

7. *On or about February 27, 2013 in the Western District of North Carolina, Tara Gist- Savage, a resident of Shelby, North Carolina, did willfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the Calendar year 2012, which income tax return was signed by the defendant and verified by a written declaration under the penalties of perjury and filed with the Internal Revenue Service, wherein the defendant understated her taxable income, despite the fact that, as the defendant then and there well knew and believed, her taxable income for said calendar year was substantially in excess of the amount stated.*

8. *The loss amount for the wire fraud scheme was between $400,000 and $1,000,000.*

9. *Tara Gist-Savage abused a position of trust in relation to the wire fraud scheme.*

10. *The loss amount for the false tax return scheme was between $80,000 and $200,000.*

11. *Tara Gist-Savage failed to report receipt of income of more than $10,000 from criminal activity relative to the tax years in 2008 through 2012.*

After calculating a total offense level of 21 and a Level V criminal history category, the probation officer calculated a Guidelines range of 70-87 months in prison.

On March 24, 2005, Petitioner appeared with counsel for her sentencing hearing and at the outset the Court reviewed the Rule 11 proceedings. Petitioner acknowledged that she understood the questions posed by Judge Kessler during the hearing and she again admitted that she was guilty of the conduct charged in the bill of information. Petitioner also acknowledged she had reviewed the Acceptance and Entry of Guilty Plea form that she signed during the hearing and she again confirmed that each of her answers were correct, and that she would answer each of the questions during the Rule 11 hearing the same way if they were posed again by the Court. Based on these representations, the Court found the guilty plea was knowing and voluntary and reaffirmed. After hearing arguments from the parties, the Court sustained Petitioner's objection to the criminal history point included in Paragraph 56 of the PSR which reduced her to a Level IV criminal history category and lowered her Guidelines range to 57-71 months. Petitioner was sentenced to a term of 60 months and she did not appeal.

4

In this timely collateral proceeding, Petitioner raises claims of ineffective assistance of counsel that will be examined herein.

## II. STANDARD OF REVIEW

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings" in order to determine whether a petitioner is entitled to any relief. The Court has considered the record in this matter and applicable authority and concludes that this matter can be resolved without an evidentiary hearing. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the effective assistance of counsel to assist in his defense. U.S. Const. amend. VI. In order to prevail on a claim of ineffective assistance of counsel, a petitioner must show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) the deficient performance was prejudicial the defense. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In measuring counsel's performance, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . ." Id. at 689. A petitioner seeking post-conviction relief based on ineffective assistance of bears a "heavy burden in overcoming this presumption." Carpenter v. United States, 720 F.2d 546, 548 (8th Cir. 1983). Conclusory allegations do not overcome the presumption of competency. Id.

To demonstrate prejudice in the context of a guilty plea, a Petitioner must demonstrate "a

5

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Petitioner "bears the burden of proving Strickland prejudice." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297 (4th Cir. 1992) (citing Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984)). If Petitioner fails to meet this burden, "a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1297 (citing Strickland, 466 U.S. at 697). In considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. See Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the Court "can only grant relief under the second prong of Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id. (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)).

In her § 2255 motion to vacate, Petitioner argues in conclusory fashion that her counsel failed to explain the court proceedings that preceded her guilty plea; failed to advise her of the elements of the two counts in her bill of information; failed to advise her of the consequences of her plea, including the fact of an entry of forfeiture; failed to advise her of her right to plead not guilty and thereby require the Government to prove her guilt at trial; and failed to investigate the case and inform her of the strength of the Government's case.

Each of these arguments is foreclosed by the record which demonstrates that Petitioner swore during her Rule 11 hearing that she had reviewed the charges and consequences of her plea with her attorney; reviewed the plea agreement with her attorney and agreed with its terms; had discussed possible defenses with counsel and admitted that she was waiving her right to

6

contest the charges; and admitted that she was in fact guilty of the charges. In addition, Petitioner admitted before this Court that the answers she had given during the Rule 11 hearing were true and that she would answer those questions the same way if they were posed again.

It is well-settled that a petitioner is bound by her sworn statements that she makes during a properly conducted Rule 11 hearing, as this Court found during sentencing. Because Petitioner's Rule 11 hearing was properly conducted, her present challenges must fail. See, e.g., Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005).

In sum, Petitioner's contentions of ineffective assistance of counsel are merely vague and conclusory statements that are wholly unsupported by the record; therefore Petitioner has failed to carry her burden of demonstrating any right to relief under Strickland. See United States v. Dyess, 730 F.3d 354, 359 (4th Cir. 2013) ("[V]ague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court.") (quoting United States v. Thomas, 221 F.3d 330, 437 (3d Cir. 2000)).

IV. CONCLUSION

Based on the foregoing, the Court finds that Petitioner's § 2255 motion to vacate is wholly conclusory and belied by the record and it will be dismissed.

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 is **DENIED and DISMISSED WITH PREJUDICE**.

(Doc. No. 1).

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

The Clerk is respectfully directed to close this civil case.

**SO ORDERED.**

Signed: October 13, 2016

Frank D. Whitney
Chief United States District Judge